IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:20-cv-00090 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE *IN REM* |
| SEVEN (7) FIREARMS AND | ) | |
| AMMUNITION SEIZED FROM | ) | |
| 566 K AVENUE, BOONE, IOWA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   **NATURE OF THE ACTION**

1.   This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 18 U.S.C. § 922(g)(1), (g)(3), (g)(8), and (g)(9), pursuant to 18 U.S.C. § 924(d).

2.   Specifically, the Defendant property is subject to forfeiture pursuant to 18 U.S.C. § 924(d) as firearms and ammunition involved in or used in knowing violations of 18 U.S.C. §§ 922(g)(1) (felon in possession of a firearm and ammunition), 922(g)(3)(drug user or drug addict in possession of a firearm and ammunition), 922(g)(8) (person subject to domestic restraining order in possession of a firearm and ammunition), and 922(g)(9) (person convicted of a misdemeanor crime of domestic violence in possession of a firearm and ammunition).

## II.   **DEFENDANT *IN REM***

3.      The Defendant property, consisting of firearms and ammunition, is generally described in Paragraph 84 and 85, below, lawfully seized on October 24, 2018 by law enforcement officers from 566 K Avenue, Boone, Iowa, also known as Frazier, Iowa.

## III.   **JURISDICTION AND VENUE**

4.      This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      This Court has *in rem* jurisdiction and venue over the Defendant property under 28 U.S.C. §§ 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

6.      The government believes, based on available knowledge, information, and belief, that the following factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for investigation and discovery.

## IV.   **FACTS**

7.      The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

8.     The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9.     Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision.  21 U.S.C. § 812(b)(1)(A)–(C).

10.     Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, but use of a Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

11.     Schedule III substances have a potential for abuse less than the substances in Schedules I and II, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to a moderate or low physical dependence or high psychological dependence.  21 U.S.C. § 812(b)(3)(A) – (C).

12.     Schedule IV controlled substances have a low potential for abuse relative to the controlled substances in Scheduled I – III, have a currently accepted medical use in treatment in the United States, but abuse of the controlled substances may lead to limited physical dependence or psychological dependence relative to the controlled substances in Schedule III. 21 U.S.C. § 812(b)(4)(A) – (C).

13.     Schedule V controlled substances have a low potential for abuse relative to the substances in the preceding schedules, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to limited physical dependence or psychological dependence relative to the controlled substances in Schedule IV.  21 U.S.C. § 812(b)(5)(A) – (C).

14.     Under the Controlled Substances Act, only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances.  21 U.S.C. § 822(a), (b).

15.     Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

16.     Under the Controlled Substances Act, it is unlawful to knowingly possess a controlled substance, absent certain circumstances.  21 U.S.C. § 844(a).

17.     Under the Controlled Substances Act, Marijuana is a Schedule I controlled substance, and Synthetic Marijuana can contain a Schedule I controlled substance or controlled substances.

18.     Under the Controlled Substances Act, Methamphetamine is a Schedule II controlled substance.

19.     Under the Controlled Substances Act, Oxycodone is a Schedule II controlled substance.

20.    Under the Controlled Substances Act, Percocet is a Schedule II controlled substance.

21.    Under the Controlled Substances Act, Opium is a Schedule II or III controlled substance, depending on its chemical concentration.

22.    Under the Controlled Substances Act, Xanax is a Benzodiazepine and a Schedule IV controlled substance.

23.    Justin Thomas Nelson ("NELSON") is the son of Thomas and Pamela Nelson.

24.    NELSON started using illegal drugs when he was a teenager, which evolved into daily drug use and was a factor in his dropping out of high school.

25.    Specifically, NELSON started illegally smoking marijuana when he was 13 years-old, in approximately 2002, and smoked marijuana several times a day.

26.    NELSON was a regular user of marijuana from age 13 until he was arrested and taken into custody, in October 2018.

27.    NELSON began illegally using Oxycodone and Percocet at age 15, and his illegal use of these prescription medications continued until October 2018, when he was arrested and taken into custody.

28.    NELSON began illegally using Xanax at age 16, and used it daily until October 2018, when he was arrested and taken into custody.

29.    NELSON began illegally using methamphetamine at age 16, and used it regularly until October 2018, when he was arrested and taken into custody.

30.    NELSON began illegally using opium at age 17, and used it regularly until October 2018, when he was arrested and taken into custody.

31.    NELSON started illegally using synthetic marijuana mixed with marijuana at age 25, and used it regularly until October 2018, when he was arrested and taken into custody.

32.    NELSON's sobriety since his arrest in October 2018 is his longest period without illegal drugs or alcohol since he was 15 years-old.

33.    NELSON's father died in approximately 2004 or 2005, around the time NELSON started using illegal drugs.

34.    NELSON's mother has been aware that he is a persistent drug user for over a decade.

35.    After NELSON started illegally using controlled substances, he continued to reside with his mother.

36.    NELSON was introduced to illegal drugs by friends, and he used illegal drugs by himself or with other drug users who came to his residence.

37.    NELSON has attempted drug treatment, and it was unsuccessful.

38.    NELSON's drug use has been so severe that it hindered his ability to be successful at meaningful employment as an adult.

39.    On August 5, 2008, NELSON was convicted in Iowa District Court for Boone County of assault with a dangerous weapon, for assaulting his girlfriend by pushing her to the ground, choking her, and threatening to shoot her with a shotgun in his possession.   While this crime was being investigated, NELSON's mother

reportedly refused to tell him where she had put firearms he considered his property, and he began breaking things in their residence.

40.     On March 24, 2009, NELSON was convicted in Iowa District Court for Boone County of two counts of delivery of marijuana (Docket No. FECR016339), a felony. He was incarcerated for this offense.

41.     On November 10, 2009, NELSON was convicted in Iowa District Court for Boone County of being a felon in possession of a firearm (Docket No. FECR016741), a felony.  NELSON sold a firearm to a person working with law enforcement, when he was a prohibited person.

42.     On August 13, 2010, NELSON was convicted in Iowa District Court for Boone County of failure to affix a tax stamp (Docket No. FECR017056), a felony. He served over a year in prison for this conviction. Law enforcement executed a search warrant at NELSON's residence, and found 43.7 grams of marijuana in a prescription bottled labeled "Justin Nelson," a firearm magazine, a tactical ballistic vest, shotgun shells, a knife with brass knuckles, and a digital scale.

43.     On May 14, 2018, NELSON was convicted in Iowa District Court for Boone County with being a felon in possession of a firearm (Docket No. FECR111585), a felony. NELSON shot a firearm through a door, and held a firearm to the head of his girlfriend, threatening to shoot her.

44.     On May 14, 2018, NELSON was convicted in Iowa District Court for Boone County for domestic abuse assault, a misdemeanor crime of domestic violence.

45.     Also on May 14, 2018, an Order of Protection was entered in Iowa District Court for Boone County against NELSON, which remains in effect until May 14, 2023.

46.     On March 26, 2019, NELSON was convicted in Iowa District Court for Boone County for domestic abuse assault display or use, a misdemeanor crime of domestic violence. NELSON threw his domestic partner to the ground, struck her with his hands, and displayed and/or used a dangerous weapon to threaten, scare, and intimidate her.

47.     In October 2018, NELSON was residing with his mother at 566 K Avenue, Boone, Iowa, also known as Frazier, Iowa.

48.     NELSON was residing with his mother, in part, because he feared being arrested by law enforcement, and did not want to return to prison.

49.     In October 2018, it was common knowledge among those who associated closely with NELSON that he had firearms in his custody and control, both on his person and in his mother's residence.

50.     On Wednesday, October 24, 2018, law enforcement officers lawfully executed two search warrants at the Nelson residence, located at 566 K Avenue, Boone, Iowa, also known as Frazier, Iowa.

51.     During the search, seven firearms, namely the Defendant firearms, were located in NELSON's bedroom, and one firearm was located in his mother's bedroom. Marijuana and drug paraphernalia were located in NELSON's bedroom.

8

52.   Also during the search, law enforcement found NELSON hiding in the closet of the northeast bedroom. A loaded Colt Cobra .38 caliber revolver was in the closet.

53.   The bedroom in the southeast corner was identified as NELSON's.

54.   Law enforcement found several loaded handguns, long guns, and personal items in the southeast bedroom, which helped identify the room as NELSON's.

55.   In NELSON's bedroom, law enforcement found several long guns leaning against the wall, and a shotgun in a baby crib. A handgun and marijuana pipe were lying in the middle of the bed, out in the open.

56.   Three hand-made weapons were found in the garage, that were loaded with ammunition and capable of firing, and a similar weapon was found in the kitchen.

57.   NELSON's mother eventually arrived home that day.

58.   Mrs. Nelson identified the room where NELSON was hiding as hers, and claimed the revolver found in it was hers.

59.   Mrs. Nelson described the other bedroom as her son's bedroom.

60.   Mrs. Nelson knew the other firearms were in her son's bedroom, and claimed some belonged to her late husband, and said she did not know details about the others.

61.     Mrs. Nelson said law enforcement coming to apprehend her son was the best thing that could have happened to him, because she was afraid he was going to hurt someone.

62.     Later that same day, Mrs. Nelson consented to a non-custodial interview by law enforcement at the Boone Police Department.

63.     Mrs. Nelson acknowledged she resided at 566 K Avenue, Boone, Iowa, also known as Frazier, Iowa, and had lived there for 23 years, since 1995.

64.     Mrs. Nelson reported NELSON had resided with her at her residence since he was let out of jail.

65.     Mrs. Nelson claimed the firearms in the residence, were "pretty much" hers, including the revolver, which she stated had belonged to her husband, though she said the handguns found were not hers.

66.     Mrs. Nelson said she had possibly seen NELSON walking around outside carrying a firearm.

67.     Mrs. Nelson acknowledged she was aware NELSON was subject to a domestic no-contact order.

68.     Mrs. Nelson acknowledged she was aware of at least some of NELSON's criminal history, she knew there were warrants out for his arrest, and that he had told her he was not going to go back to prison.

69.     Mrs. Nelson was aware that her son was charged in approximately 2009 with assault with a dangerous weapon.

70.     Mrs. Nelson said the marijuana in the residence was not hers, and she had recently picked up a marijuana pipe of her son's and basically hidden it in her sock drawer.

71.     Mrs. Nelson stated she was aware it was illegal for a felon to possess firearms.

72.     Mrs. Nelson said she would like the firearms back to give to her late husband's other son, who did not have a criminal record.

73.     Mrs. Nelson essentially said the firearms had been in her residence the last 14 years.

74.     As a convicted felon, NELSON was prohibited in October 2018 under federal law from possessing firearms and ammunition.

75.     In 2018, and earlier, NELSON and his mother knew he was a felon who possessed the Defendant firearms and ammunition in their shared residence.

76.     As a drug addict and drug user, NELSON was prohibited in October 2018 under federal law from possessing firearms and ammunition.

77.     In 2018 and earlier, NELSON and his mother knew he was a drug addict or user of illegal drugs who possessed the Defendant firearms and ammunition in their shared residence.

78.     As a person previously convicted of a misdemeanor crime of domestic violence, NELSON was prohibited under federal law in October 2018 from possessing firearms and ammunition.

11

79.   In 2018 and earlier, NELSON and his mother knew he was a person previously convicted of a misdemeanor crime of domestic violence who possessed the Defendant firearms and ammunition in their shared residence.

80.   As a person subject to a domestic restraining order, NELSON was prohibited under federal law in October 2018 from possessing firearms and ammunition.

81.   In 2018 and earlier, NELSON and his mother knew he was person subject to a domestic restraining order who possessed the Defendant firearms and ammunition in their shared residence.

82.   On August 22, 2019, NELSON pled guilty in the U.S. District Court for the Southern District of Iowa to being a prohibited person in possession of a firearm on October 24, 2018.

83.   In his federal Plea Agreement, NELSON admitted he was prohibited from possessing firearms and ammunition as a felon, as a person subject to a domestic restraining order, and as a person convicted of a misdemeanor crime of domestic violence.

84.   In his federal Plea Agreement, NELSON admitted he illegally possessed at least eight firearms, recovered from the residence he shared with his mother, more specifically described as follows:

a)   a loaded Star Firearms Firestar Plus 9mm pistol, with an obliterated serial number;

b)   a loaded Taurus Judge 45LC, .410 gauge revolver, with serial number CP782126;

12

c) a loaded Savage Arms Model 99E, .243 caliber rifle, with serial number 1182993;

d) a loaded Winchester Model 12, 16 gauge shotgun, with serial number 1422843;

e) a loaded JC Higgins Sears, Roebuck, and Company Model 20, 12 gauge shotgun, with no serial number;

f) a loaded Marlin Firearms Company Model 60, .22LR caliber rifle, with serial number 15313723;

g) a New England Firearms Model Pardner SBl, .410 gauge shotgun, with serial number NB284003; and

h) a Stevens Model 79, .410 gauge shotgun, with serial number D929729.

The above-listed eight firearms were each manufactured outside the State of Iowa and therefore traveled across a state line prior to Defendant's possession of them on October 24, 2018.

85. Seven of the eight firearms listed above that NELSON agreed to forfeit are the Defendant firearms and ammunition. The loaded Taurus Judge 45LC, .410 gauge revolver, serial number CP782126 is not subject to forfeiture in this complaint.

86. On February 5, 2020, NELSON was sentenced to 72 months' incarceration in federal prison, to be followed by three (3) years of supervised release.

87. On or about February 25, 2020, Pamela Nelson, Defendant's mother, filed a Petition to Adjudicate Rights, in which she contested the forfeiture of firearms and ammunition to which her son agreed.

13

88.    In Mrs. Nelson's pleading, she appears to have identified seven (7) firearms as hers, including four (4) loaded firearms.

89.    Mrs. Nelson's also claims an interest in a Samsung cell phone, an old police scanner, and night vision goggles, which are not now and have never been subject to federal forfeiture.

90.    Mrs. Nelson's claim asserts "[a]ll guns on page 1 belonged to my husband who passed in 2005. When he passed his property became mine. I plan on selling . . . these guns to a gun shop so I can replace doors that were broken in half when Justin was arrested. The .38 hand gun I keep in my bedroom in case I need it."

91.    Insofar as these firearms were in Mrs. Nelson's home since 2005, she knew they were there, and accessible by her son, after he became a convicted felon, when she knew he was a user of illegal drugs, and after he had been convicted of a misdemeanor crime of domestic violence and was subject to a domestic restraining order.

92.    When asked to list any documents that would support her claimed interest in the firearms, Mrs. Nelson's claim replied, "I don't know what this means."

93.    On October 24, 2018, Mrs. Nelson was fully aware the Defendant firearms and ammunition were in her residence, that her son had access to them, and that he was a drug user, felon, convicted of a misdemeanor crime of domestic violence, and subject to a domestic restraining order.

14

94.    At no time pertinent to the events involved in this case was NELSON authorized under federal law to possess, distribute, dispense, or possess with the intent to distribute or dispense, any controlled substance.

95.    It is illegal for a prohibited person, such as a felon, drug addict or drug user, person convicted of a misdemeanor crime of domestic violence, or a person subject to a domestic restraining order, to actually or constructively possess a firearm or ammunition, even if he or she does not own it.

96.    A person can have sole or joint possession of a firearm and ammunition.

97.    A person who has direct physical control over a firearm and ammunition, in any way, shape, or form, is in actual possession of them.

98.    A person who, although not in actual possession of a firearm and ammunition, has the ability to knowingly exercise dominion and control over them, either directly or through another person, is in constructive possession of them.

99.    A person has constructive possession over a firearm and ammunition if he or she has dominion and control over the premises or residence where the firearm and ammunition is located.

100.    NELSON was knowingly in actual and constructive possession of the Defendant firearms and ammunition at his mother's residence when he was prohibited under federal law from possessing them.

101.   The firearms and ammunition seized are subject to forfeiture because they were illegally possessed by NELSON when he was a prohibited person under federal law, as set forth above.

102.   Mrs. Nelson was not, in October 2018, an innocent owner of the Defendant firearms and ammunition.

103.   In October 2018, Mrs. Nelson knew of the conduct giving rise to the forfeiture, namely, that NELSON was a felon, drug addict or drug user, a person convicted of a misdemeanor crime of domestic violence, and a person subject to a domestic restraining order, who was in possession of the Defendant firearms and ammunition in their shared residence.

104.   Upon learning of the conduct giving rise to the forfeiture of the Defendant firearms and ammunition, Mrs. Nelson took no actions that were reasonably necessary under the circumstances to terminate such use of the property. To the contrary, she let NESLON have free access to the Defendant firearms and ammunition, even though she knew this created a dangerous situation.

## V.    CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant property be forfeited to the United States in this action and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:   */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Brian Pontius, hereby verify and declare under penalty of perjury that I am a Deputy for the Boone County Sheriff's Office, and that I have read the foregoing Verified Complaint, *USA v. Seven (7) Firearms and Ammunition seized from 566 K Avenue, Boone, Iowa*, and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Deputy Sheriff.

Dated: March 10, 2020.

Deputy Brian Pontius
Boone County Sheriff's Office

18